# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON SLOAN, | ) | |
| Plaintiff, | ) | Civil Action No. 10-205Johnstown |
| | ) | |
| v. | ) | |
| | ) | District Judge McLaughlin |
| GERALD L. ROZUM, et al, | ) | |
| Defendants. | ) | Magistrate Judge Baxter |
| | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.    **RECOMMENDATION**

It is respectfully recommended that the motion for summary judgment [ECF No. 77] be granted in its entirety.  The Clerk of Courts should be directed to close this case.

II.    **REPORT**

A.    **Relevant Procedural History**

Plaintiff, a state inmate acting *pro se*, filed this civil rights action on August 9, 2010. Plaintiff asserts various constitutional claims arising out of 12 separate "issues" that occurred between February 2009 and July 2010 during his incarceration in the Restricted Housing Unit at SCI Somerset.  ECF No. 7.  Plaintiff has sued virtually every SCI Somerset employee with whom he came into contact during that time.[1]

---

[1] As Defendants to this action, Plaintiff named the following Department of Corrections employees:  Superintendent Gerald Rozum; Superintendent Assistant/Grievance Coordinator Heidi Sroka; Librarian Dawn Davis; Deputy Superintendent-Facility Management Steven Glunt; Correctional Classification & Programs Manager Allen Joseph; Records Officer J.M. Ellison; Business Manager Jack Loughrey; Mailroom Supervisor Susan Darr; Correctional Health Care Administrator Denise Thomas; Captains D.P. Paserba and J.P/ LaFramboise; Lieutenants R. Snyder; Tomas Fultz, R.C. Bakos, Tomas J. Regester, X. Kasterko, G.J. Demchak and X.

Presently before this Court is Defendants' motion for summary judgment. ECF No. 77. Despite being given the opportunity to do so (see ECF No. 83), Plaintiff has not filed a brief in opposition to the motion for summary judgment. This matter is ripe for disposition by this Court.

**B.      Standards of Review**

**1.     *Pro Se* Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same).

---

Webreck; Sergeants D.L. Abbott, Denis Hainsworth, S. Haer, X. Gottschalk, K. Foust and M.J. Boyd; Correctional Officers Nathaniel G. Nesmith, J.P. McVicker, Troy A. Hause, L.A. Kordish, Mike Scott; R. Coutts, Dan Rice, M.A. Baker, D. Ackerman, N. Hostetter, F.J. Deem, Fred S. Walters, R.G. Stem, R.D. Harkcom, W.P. Lightner and Steve E. Paulson; Chief Grievance Officer Dorina Varner; and Designee's Keri Moore and Tracy Williams. ECF No. 68-1, Amended Complaint, page 2.

### 2.  Motion for summary judgment – Rule 56

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

Under Rule 56, a party opposing a motion for summary judgment must cite to specific materials in the record that demonstrate the existence of a disputed issue of material fact.  See Fed.R.Civ.P. 56(c)(1)(A).  A material fact is a fact that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Id. at 249.  "If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'"  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998).

The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.  Celotex, 477 U.S. at 322.  See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present

affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).[2]

Plaintiff has failed to file any opposition to the motion for summary judgment.  The docket reflects that Plaintiff was aware of the pendency of Defendants' summary judgment motion and he has had ample time to respond within the eight months during which the motion has been pending.

C.    **Allegations of the Amended Complaint**

In the Amended Complaint, Plaintiff has organized his claims into numbered "Issues."[3] For ease of analysis, this Court will follow Plaintiff's numbering system and organization. Because the lengthy factual specifics of each Issue are discussed throughout this Report and Recommendation, for the sake of brevity, each Issue is summarized here.

**ISSUE 1** – On February 2, 2009, Defendant McVicker searched Plaintiff's property and destroyed his personal and legal property.  Plaintiff also sought permission to

---

[2] When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material.  Anderson, 477 U.S. at 255.  The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).  However, a court need not "turn a blind eye to the weight of the evidence."  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

[3]  Plaintiff also incorporates by reference the voluminous exhibits attached to his Original Complaint.

access his stored legal property in April, May, July and August of 2009 and several named Defendants ignored Plaintiff's repeated requests for access.

**ISSUE 2** – On April 8, 2009, Plaintiff gave Defendant Nesmith an envelope containing documents pertaining to grievances with cash slips that needed to be verified, stapled together and sent to Library for copying. Nesmith never returned with Plaintiff's documents and Defendant Davis, the librarian, indicated she did not receive anything dated April 8th.

**ISSUE 3** – On April 17, 2009, Plaintiff gave Defendant Gottschalk an envelope marked as legal mail which Plaintiff told him was "time sensitive." Plaintiff claims that Gottschalk opened and read the contents, and refused to mail it because Gottschalk determined the documents were not legal mail. Defendant Paulson also refused to mail the documents.

**ISSUE 4** – On June 15th and July 29th of 2009, Defendant Lightner searched Plaintiff's cell and destroyed Plaintiff's personal and legal property.

**ISSUE 5** –Plaintiff was denied access to the law library on four separate occasions by several Defendants, beginning on October 23, 2009.

**ISSUE 6** – On October 12, 2009, Plaintiff's thermal top was confiscated by Officer Scott (not a named Defendant to this action). Three weeks later, Scott confiscated Plaintiff's thermal pants. A response to a grievance (#293427) on this matter indicated that the top would be returned, but it was not. When Plaintiff complained to Defendant Coutts, Plaintiff was told that he would not receive any of his property "due to him being a snitch for filing grievances and making complaints."

**ISSUE 7** – On December 23, 2009, Plaintiff gave Rice a large envelope marked as "legal mail" to be stamped, stapled and placed in the outgoing mail. The same envelope was later returned to Plaintiff and had been opened and taped closed by Defendant Haer. The next

day, Plaintiff separated the contents into five separate envelopes and gave them to Defendant

Baker. Later that day, Plaintiff received cash slips from Defendant Ackerman indicating the

return of the five envelopes, but the five envelopes were not attached. Plaintiff avers that

Defendants Paserba and Loughry tried to cover up the destruction of his property by claiming he

had insufficient funds to pay for postage.

      **ISSUE 8** – Beginning on March 26, 2009, Plaintiff sought to review his medical

records. The review was delayed for several months.

      **ISSUE 9** – On February 19, 2010, Plaintiff gave Defendant Hause two envelopes

and cash slips "to be verified, stapled together and placed in the mail," but the envelopes were

not mailed. Instead, Defendant Frazier returned the two envelopes on February 24th to Plaintiff.

Plaintiff tried to mail the envelopes again and they were returned without explanation.

      **ISSUE 10** – On March 5, 2010, Plaintiff's cell was searched. Legal and personal

property, including "affidavits and court filings pertaining to the wrongdoing of prison officials,

pictures, letters and obituaries," was destroyed and confiscated. Plaintiff alleges that during a

conversation with Defendant Lucas on May 24th, Lucas indicated that the reasons for the cell raid

and confiscation of lawsuit was "due to the lawsuit being against prison officials and grievances

filed by Plaintiff." Defendant Lucas further explained that he was not present during the cell

search, but had heard about it and that if Plaintiff's complaints continued things would get worse

for him.

      **ISSUE 11** – Plaintiff alleges that Defendants Walters and Darr tampered with his

legal mail by delaying its posting for two days in September of 2009.

      **ISSUE 12** – Plaintiff outlines his supervisory claims against Rozum, Varner,

Williams, Moore and Sroka.

Throughout the Amended Complaint, Plaintiff generally alleges that many of Defendants' challenged actions were motivated by an intent to retaliate against Plaintiff.

### D. Exhaustion

#### 1. The PLRA

Defendants argue that some of Plaintiff's claims should be dismissed for failure to comply with the exhaustion requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[4]

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).[5] Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144

---

[4] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be raised and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002); Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

[5] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

(1992). The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[6]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

## 2.    The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary

---

[6]  There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in Booth, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." <u>Jones v. Bock</u>, 549 U.S. at 218.  <u>See</u> <u>also</u> <u>Spruill</u>, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

The DC-ADM grievance system, available to state prisoners, consists of three separate stages.  First, the prisoner is required to timely submit a written grievance[7] for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days.  Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days.  Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days.  <u>See</u> <u>Booth v. Churner</u>, 206 F.3d 289, 293 n.2 (3d Cir. 1997), <u>aff'd</u>. 532 U.S. 731 (2001).


### 3.    Plaintiff's Utilization of the Grievance Process

Defendants move for summary judgment on several of Plaintiff's claims based upon his

---

[7]   The DC-ADM 804 grievance system policy requires the following at the first level:

> The inmates shall include a statement of the facts relevant to the claim.  The text of the grievance shall be legible, presented in a courteous manner, and the statement of facts shall not exceed two pages.  The inmate should identify any persons who may have information that could be helpful in resolving the grievance.

<u>Id</u>. at VI(A)(a)(1)(g).

failure to exhaust.  In support of their motion for summary judgment, Defendants have produced documentary evidence.[8]  Because Plaintiff has failed to oppose the motion for summary judgment with evidence raising any disputed material facts, summary judgment should be granted in favor of Defendants where they have provided evidence of Plaintiff's failure to exhaust.  Fed.R.Civ.P. 56.[9]

ISSUE 1 – Plaintiff exhausted his claim against Defendant McVicker concerning the cell search on February 2, 2009, but Plaintiff has not filed any grievance regarding claims that Haer, Boyd, Thomas, Regester and LaFramboise ignored Plaintiff's requests to access stored legal property in April, May, July and August of 2009.  ECF No. 79, Declaration of Heidi Sroka, Superintendent's Assistant, ¶ 2.  Summary judgment should be granted on the lack of access to stored property claims against these Defendants.

ISSUE 4 – Plaintiff filed Grievance #283593 complaining of Defendant Lightner's cell searches (the last of which was July 29, 2009).  The evidence before this Court reveals that Plaintiff's appeal to the Final Review level was rejected as untimely (see ECF No.7-4, pages 11-15) and so because Plaintiff has failed to "properly exhaust" his administrative remedies under the PLRA (see Woodford), summary judgment should be granted in favor of Defendants as to this claim.

ISSUE 6 – Although Plaintiff filed a grievance (#293427) about the confiscation of his thermal top by Defendants, his appeal was rejected at the Final Review level due to Plaintiff's

_____

[8]  This Court also reviews the exhibits attached to Plaintiff's Original Complaint.

[9]  A party moving for summary judgment on an issue for which it bears the ultimate burden of proof faces a more difficult road in seeking summary judgment. "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." El v. Se.Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).  In such a case, "if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact," summary judgment is inappropriate.  Id.

failure to file the appropriate documentation in support of the appeal. ECF No. 79-1, page 13. Because Plaintiff has failed to "properly exhaust," summary judgment should be granted in favor or Defendants as to this claim.

ISSUE 8 – Although Plaintiff filed a grievance (#303711) on January 11, 2010 relating to this Issue, his appeal was rejected at the Final Review stage because it was untimely. ECF No. 79-1, page 22. Again, Plaintiff has failed to "properly exhaust" and summary judgment should be granted in favor of Defendants.

ISSUE 10 – Plaintiff has not filed any grievance in relation to an alleged cell search on March 5, 2010. Plaintiff admits as much in his complaint (see ECF No. 68-1, ¶ 85) and contends that Defendant Haer and Snyder refused to provide him a grievance form. Yet the record reflects that Plaintiff has filed over 60 grievances from the time of his arrival at SCI Somerset in February of 2009 through July 2010. See ECF No. 79-1, Sroka Declaration, ¶ 3. Plaintiff has provided no evidence in support of his general averment that he could not exhaust because he did not have a grievance form. Without any evidence indicating to the contrary, this Court concludes that the administrative remedy process was available[10] to Plaintiff and he failed to utilize it in respect to this claim.

ISSUE 11 – On September 16, 2009, Plaintiff alleges he gave a large envelope containing

---

[10] See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not *available* even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it."); McKinney v. Guthrie, 2009 WL 274159, at * 1 (3d Cir. 2009) ("[A]n administrative remedy may be *unavailable* if a prisoner is prevented by prison authorities from pursuing the prison grievance process."); Brown, 312 F.3d at 113 ("Assuming security officials told Brown to wait for the termination of the investigation before commencing a formal claim, and assuming the defendants never informed Brown that the investigation was completed, the formal grievance proceeding required by DC–ADM 804 was never "*available*" to Brown within the meaning of 42 U.S.C. § 1997e.") (emphasis added throughout).

legal mail to Defendant Walters to be placed in the mailbox. ECF No. 68-1, ¶¶ 89-90. Plaintiff

alleges he filed Grievance # 292513 as to this issue. There is no evidence in the record to

support Defendants' contention that Plaintiff has failed to exhaust his administrative remedies on

this issue. Because it is Defendants' burden to prove the exhaustion defense (see Brown, 312

F.3d at 111), summary judgment should be denied as to this claim on the grounds of failure to

exhaust.


### E.    Access to Courts

Much of Plaintiff's lengthy complaint revolves around the denial of his constitutional

right of access to the courts.[11] Allegations regarding the destruction of legal property, tampering

with legal mail, and inadequate law library time all implicate the constitutional right of access to

the courts. This Court will also liberally construe Plaintiff's allegations about the denial of access

to his medical records as an access to courts claim because he alleges that the review impacted

his ability to file an anticipated lawsuit.

Prisoners have a constitutional right to "adequate, effective and meaningful" access to the

courts. Bounds v. Smith, 430 U.S. 817 (1977).[12] Importantly, a plaintiff must demonstrate

---

[11] The right of access to courts may arise in the context of the Article IV Privileges and
Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process
Clause, and the Fourteenth Amendment Equal Protection Clause. See Christopher v. Harbury,
536 U.S. 403, 415 n.12 (2002).

[12] The Supreme Court has identified two general categories of denial of access to courts claims.
Christopher, 536 U.S. at 412-13; see also Gibson v. Superintendent of N.J. Dep't of Law & Pub.
Safety – Div. of State Police, 411 F.3d 427, 441 (3d Cir. 2005) overruled in part on other
grounds as noted in Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010). The first type is
"forward-looking" claims which allege that official action frustrates a plaintiff in preparing and
filing suit at the present time. Christopher, 536 U.S. at 413. The second category covers
"backward –looking" claims which allege that official acts "have caused the loss or inadequate
settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to
seek some particular order of relief …. These cases do not look forward to a class of further

actual injury stemming from the denial of access.[13]  Lewis v. Casey, 518 U.S. 343 (1996).  The

actual injury requirement "derives from the doctrine of standing, a constitutional principle that

prevents courts of law from undertaking tasks assigned to the political branches."  Id. at 349.

See also Stokes v. Gehr, 399 Fed.Appx 697, 699 (3d Cir. 2010) (the actual injury requirement

articulated in Lewis is "derived from principles of standing, … an unwaivable constitutional

prerequisite.").

      A plaintiff must allege both an underlying cause of action, whether anticipated or lost,

and official acts frustrating the litigation.  Christopher v. Harbury, 536 U.S. 403 (2002).  In order

to state an access to courts claim, "[w]here prisoners assert that defendants' actions have

inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an

'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying

claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost

claim other than in the present denial of access suit."  Monroe v. Beard, 536 F.3d 198, 205-06

(3d Cir. 2008) quoting Christopher, 536 U.S. at 415.  "To that end, prisoners must satisfy certain

pleading requirements: The complaint must describe the underlying arguable claim well enough

to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"  Id.

      Furthermore, a plaintiff must demonstrate intent on the part of the defendants.   The Third

Circuit has explained:

---

litigation, but backward to a time when specific litigation ended poorly, or could not have
commenced, or could have produced a remedy subsequently unobtainable.  The ultimate object
of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the
judgment in the access claim itself, in providing relief obtainable in no other suit in the future."
Christopher, 536 U.S. at 413-14 (citations omitted).

[13]  Prisoners are limited to proceeding on access to courts claims challenging either their
sentence (by direct or collateral attack) and their conditions of confinement, as the "impairment
of any other litigating capacity is simply one of the incidental (and perfectly constitutional)
consequences of conviction and incarceration."  Lewis, 518 U.S. at 355.

A denial of access claim is available where the state officials "*wrongfully and intentionally* conceal information crucial to a person's ability to obtain redress through the courts, and so *for the purpose of frustrating that right*, and that concealment, and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled.

Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety – Div. of State Police, 411 F.3d 427, 445 (3d Cir. 2005). See also Burkett v. Newman, 2012 WL 1038914, at *3 (W.D. Pa. Fed. 21, 2012).

So then, in order to support his access to courts claims, Plaintiff Sloan is required to demonstrate that he has lost the opportunity to pursue a nonfrivolous or arguable underlying legal claim, that there is no other remedy available to him, and that Defendants had the requisite intent to deny his constitutional right of access to courts. Here, Plaintiff alleges that the loss/destruction of his legal property (on 2/2/2009, 6/15/2009, 7/29/2009, 12/22/2009, and 3/5/2010 - referring to Issues 1, 4, 7, and 10) resulted in actual injury in relation to: 1) the loss of testimony and newly discovered evidence for a planned PCRA petition; 2) the loss of an anticipated lawsuit concerning denial of mental health treatment at SCI Albion; 3) the loss of an anticipated RLUIPA lawsuit against SCI Somerset officials regarding the denial of participation in Ramadan; and 4) the loss of testimony from inmate witnesses of retaliatory conduct by officials at SCI Somerset. ECF No. 68-1, pages 23-24.

Plaintiff also alleges that the destruction of or refusal to mail out personal and legal mail, cell searches, and denial of access to stored legal and personal property precluded him from submitting these petitions and lawsuits and caused him to miss deadlines (referring to Issues 1, 4, 7, 9, 10, and 11). Id. at page 24. Plaintiff also contends that the months-long delay in providing him with access to his medical records impacted his ability to file an anticipated lawsuit (referring to Issue 8). Id. at ¶ 73.

*ACCESS ISSUES RELATED TO CONFISCATION/LOSS*
*OF LEGAL MATERIALS*

ISSUE 1 – Plaintiff alleges that on February 2, 2009, at the time of his arrival at SCI Somerset, Defendant McVicker confiscated legal paperwork consisting of "court filings, research notes, and evidence for a pending lawsuit." ECF No. 68-1, ¶ 4. In his pleading, Plaintiff does not elaborate on how the confiscation of these materials caused him an actual injury. Nor does Plaintiff allege any facts in his underlying claim in order to indicate whether the claim is nonfrivolous or arguable.

However, a review of the evidentiary record before this Court does reveal some facts about the underlying claims. A grievance submitted by Plaintiff about the February 2nd issue with Defendant McVicker indicates that McVicker began to separate Plaintiff's property into two piles: one for SCI Forest cell and one for SCI Somerset storage. Plaintiff explained that "I stated to this Officer that the things he was taking out was legal work for a pending civil case. This Officer stated 'why would I make it easy for you to sue us?" ECF No. 7-1, page 2.

In his appeal of the grievance, Plaintiff identifies three cases in which he was acting pro se and the "denial of [his] legal work has caused [him] to be late and greatly effected [sic] the litigation of these cases, hince [sic] the denial of access to court." ECF No. 7-1, page 11. Of the three cases Plaintiff identifies, two are criminal cases in which Plaintiff was represented by a public defender (and so would not have been filing pleadings on his own behalf). The civil case was a case before this Court: Sloan v. Brooks, C.A. No. 08-163E. In that case, Plaintiff missed only a few deadlines, none of which have caused him any injury. See ECF Nos. 39, 43, 52, and

59 of C.A. No. 08-163E.   This case was ultimately dismissed for failure to state a claim on September 10, 2010 for reasons unrelated to any delays in Plaintiff's filings.

Accordingly, Plaintiff cannot demonstrate any actual injury from McVicker's confiscation of legal work and summary judgment should be granted in favor of Defendants on this claim.

ISSUE 2 - On April 8, 2009, Plaintiff gave an envelope (containing grievance documents with cash slips that needed to be verified, stapled and sent to Library for copying) to Defendant Nesmith and the documents never arrived in the library.  Plaintiff has not pointed to any injury from the loss of these documents.  In any event, these documents are not legal mail.  Fontroy v. Beard, 559 F.3d 173, 174 n.1 (3d Cir. 2009) (legal mail defined as attorney and court mail collectively); Caldwell v. Folino, 2009 WL 3082524, at *7 (W.D. Pa.).

ISSUE 3 – On April 17, 2009, Plaintiff alleges he gave an envelope marked legal mail to Defendant Gottschalk who opened, read, and refused to mail it because Gottschalk determined it was not legal in nature.  Again, Plaintiff has not pointed to any actual injury to support an access to courts claim.  Furthermore, the evidence reflects that the envelope in question was marked Library, not "legal mail."  ECF No. 7-3, page 3.  The Initial Review Response to Plaintiff's grievance indicates that: the envelope was taped shut when Plaintiff gave it to Gottschalk; when Gottschalk questioned Plaintiff about the contents, Plaintiff said "none of your fucking business"; and when Gottschalk opened the envelope, he discovered multiple Request to Staff forms, not any legal mail.  Id.  Gottschalk then told Plaintiff he must submit Request to Staff forms one at a time.  Id.  Gottschalk acted within Department of Corrections policy which permits the inspection of internal mail for security purposes.  ECF No. 7-3, page 6.  Defendants

have provided evidence that the materials were not legal, and so their loss cannot support an access to courts claim.

*ACCESS ISSUES RELATED TO ISSUES WITH OUTGOING LEGAL MAIL*[14]

ISSUE 7 – On December 22, 2009, Plaintiff alleges that his legal mail and accompanying cash slips addressed to the U.S. District Court were destroyed or lost.  ECF No. 68-1, ¶¶ 54-61.

There is no actual injury stemming from the alleged loss of this legal mail.  In the exhibits attached to his Original Complaint, Plaintiff admits that the five envelopes he was prevented from mailing contained U.S. Marshal service forms for C.A.No. 09-100E.  ECF No. 7-6, pages 15-20.  The record further establishes that Plaintiff was allowed to continue that case despite a delay regarding service.  No legal claims were lost or dismissed as a result of Plaintiff's inability to mail these envelopes which means the Plaintiff suffered no injury to support an access to courts claim.  Summary judgment should be granted in this regard.

ISSUE 9 – On February 19, 2009, Plaintiff alleges he gave Defendant Hause two envelopes and cash slips to be placed in the mail.  On February 24, 2010, Officer Frazier returned the two envelopes which contained court filings and legal correspondence.  ECF No. 68-1, ¶¶ 75-76.  Plaintiff further alleges that he gave the envelopes to Defendant Boyd on February 24th explaining "time requirements faced by the plaintiff."  Id. at ¶ 77.  Two days later, the same envelopes were returned to Plaintiff.  Id. at ¶ 78.  Plaintiff alleges that he filed Grievances # 308696 and #309358 in an attempt to resolve this ongoing issue.  Id. at ¶ 79.

---

[14] Plaintiff's mail issues will also be analyzed separately under the First Amendment in Part F below.  See generally, Hagan v. Rogers, 2010 WL 534188 (D.N.J.).

Plaintiff has failed to point to any actual injury that resulted from the several-day delay in mailing in order to support his access to courts claim.[15]

ISSUE 11 – On September 16, 2009, Plaintiff alleges that he gave a large envelope containing legal mail to Defendant Walters to be placed in the mailbox which was not received in the mailroom until September 18th.  ECF No. 68-1, ¶¶ 89-90.  In his Amended Complaint, Plaintiff alleges that he filed Grievance #292513 as to this issue.  Id. at ¶ 95.  This Grievance is not in evidence before this Court and Plaintiff fails to describe how the two-day delay in mailing legal mail of some unspecified kind caused actual injury.  Summary judgment should be granted in favor of Defendants.

As Defendants point out, Plaintiff has only made passing reference in his Amended Complaint to a planned PCRA petition and to anticipated lawsuits against Albion and Somerset officials.  Id. at pages 23-24.   Plaintiff's passing references, without further factual and evidentiary support, are not sufficient to withstand the attack of summary judgment.  The law is clear that on an access to court claim (as a matter of standing), Plaintiff must demonstrate that he lost the opportunity to pursue a nonfrivolous or arguable underlying claim and must point to facts that identify the underlying claim with enough description "to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope.").  Christopher, 536 U.S. at 416.

---

[15]   A review of the Grievances stemming from the February mail incident reveals that one envelope was addressed to the Clerk of the U.S. District Court and contained U.S. Marshal service forms and a motion, and the other envelope was addressed to Assistant Attorney General Douglas Barbour and contained a motion.  ECF No. 79-1, pages 24-31; ECF No. 79-2. The civil case to which Plaintiff refers was Sloan v. Brooks, C.A. No. 08-163E.  In that case, Plaintiff missed only a few deadlines during the relevant time period, none of which have caused him any injury.  See ECF Nos. 39 (Motion for Reconsideration), 43 (Motion for Leave to File Amended Complaint), 52 (Order reopening case), and 59 (Order granting motion for leave to file Amended Complaint) of C.A. No. 08-163E   This case was ultimately dismissed for failure to state a claim on September 10, 2010 for reasons unrelated to any delays in Plaintiff's filings.

*ACCESS ISSUES RELATED TO LAW LIBRARY*

ISSUE 5 - Plaintiff complains that he was improperly denied access to the law library on 10/23/2009, 12/4/2009, 7/15/2010, and 7/19/2010 by Defendants Regester, Bakos, Boyd, Hostetter, and Foust.  ECF No. 68-1, ¶¶ 43-45.   Plaintiff further alleges that he made verbal and written complaints about the denials to Boyd, Foust, Glunt, Hostetter, Demchak, Hainsworth, Fultz and Rozum.  Id.  Plaintiff explains that he filed Grievance # 300323 in an attempt to resolve his complaints about library time.  Id.  Plaintiff has failed to demonstrate how the denial of library time four times over a period of ten months resulted in the loss or rejection of any valid legal claim.  See Oliver, 188 F.3d at 177.  Accordingly, summary judgment should be granted in favor of Defendants on this claim.

A plaintiff must demonstrate **with specificity** the manner in which the inadequacies of the prison law library or legal assistance, or the purported governmental interference, caused an actual injury to the inmate, such as the "loss or rejection of a legal claim."  See Oliver v. Fauver, 188 F.3d 175, 177 (3d Cir. 1997) quoting Lewis, 518 U.S. at 351.  Here, Plaintiff has failed to meet this burden in every regard.

**F.     Legal Mail**

A prisoner's right to send or receive legal mail is uncontroverted and implicates First Amendment concerns.  A First Amendment violation may be established "without an actual injury where there is a pattern and practice of opening properly marked" legal mail.  Hagan v. Rogers, 2010 WL 5343188, at 7 (D.N.J.).  The Third Circuit has explained:  "nothing in Casey or Oliver suggests that a prisoner alleging that officials have opened his legal mail outside of his

presence and thereby violated his First Amendment rights need allege any consequential injury stemming from that violation, aside from the violation itself." <u>Jones v. Brown</u>, 461 F.3d 353, 359 (3d Cir. 2006).

As alleged, Plaintiff's Issues 2, 3, 7, 9, and 11 involve mail. However, as discussed earlier, the evidence reflects that Issues 2 and 3 involve inter-agency mail, and not **legal** mail. At Issue 11, Plaintiff complains of the two-day delay in mailing a large envelope in September 2009. This claim does not rise to the level of a First Amendment violation (<u>see</u> <u>Rowe v. Shake</u>, 196 F.3d 778, 780, 782 (7th Cir. 1999) (brief delays in mailing do not amount to First Amendment violation) as Plaintiff does not allege Defendants opened and read any legal mail.

At ISSUES 7 and 9, five envelopes addressed to the U.S. District Court (and containing U.S. Marshal service forms for 09-100E – <u>see</u> ECF No. 7-6, pages 15-20) were lost in December of 2009 and two envelopes addressed to the Court and the Office of the Attorney General (and containing service forms and a motion – <u>see</u> ECF Nos. 79-1, pages 24-31; 79-2) were returned to Plaintiff in February of 2010. A review of the grievances from both the December and February incidents reveals that the mail was not posted because Plaintiff had insufficient funds in his account to cover the postage fees. <u>See</u> ECF Nos. 7-6, 79-1, and 79-2. Although Plaintiff alleges generally that he did have sufficient funds, he has provided no evidence of such and so Defendants' evidence is uncontradicted. These two incidents do not demonstrate a pattern and practice of interference with legal mail in order to support Plaintiff's First Amendment claim. <u>See</u> <u>generally</u>, <u>Bieregu v. Reno</u>, 59 F.3d 1445, 1452 (3d Cir. 1995) (distinguishing between single inadvertent instance of inmate's court mail being opened outside his presence, and pattern and practice of such conduct), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Lewis v. Casey</u>, 518 U.S. 343 (1986); <u>Ahlers v. Rabinowitz</u>, 684 F.3d 53, 64 (2d Cir. April 6, 2012) ("an isolated incident of

mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'"); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990) (isolated incidents of mail interference, "without any evidence of improper motive or resulting interference with … the right to counsel of access to the courts, does not give rise to a constitutional violation."). Accordingly, summary judgment should be granted in favor of Defendants.

###### G.    Loss/Confiscation of Property

A recurring theme throughout Plaintiff's lengthy complaint is the loss or confiscation of personal property.

The analysis of a due process claim stemming from the deprivation of a property interest focuses on the existence of a post-deprivation remedy. An unauthorized, intentional deprivation of property by government employees does not violate the Due Process Clause so long as there is a "meaningful post-deprivation remedy" available to the plaintiff. Hudson v. Palmer, 468 U.S. 517, 533 (1984). See also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 421 (3d Cir. 2000) ("[W]here it is impractical to provide meaningful pre-deprivation process, due process will be satisfied by a meaningful post-deprivation remedy."). In Hudson, the Supreme Court reasoned that an intentional deprivation cannot be controlled in advance so as to adequately provide any pre-deprivation process. Id. See also Parratt v. Taylor, 451 U.S. 527 (1981) (held that a negligent deprivation of property by state officials does not violate the Fourteenth Amendment if an adequate post-deprivation state remedy exists), overruled on other grounds by, Daniels v. Williams, 474 U.S. 327 (1986). Thus, Plaintiff has no viable claim under the Constitution if an adequate post-deprivation remedy was available to him.

The prison grievance system has been deemed an adequate post-deprivation remedy. Tillman, 221 F.3d at 421.

This Court takes judicial notice of the fact that the Department of Corrections has a grievance system in place. Because Plaintiff had adequate post-deprivation remedies available to him to contest the loss of his personal property, his due process claim fails.

Accordingly, the motion for summary judgment should be granted in favor of Defendants as to every claim regarding loss of personal property.


### H.    Retaliation Claims

Plaintiff's Issues 1, 4, 6, 9, and 10 contain retaliation claims. As previously discussed, Issues 4 and 6 have not been exhausted and portions of Issue 1 (those against Defendants other than McVicker) have not been exhausted.

It is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under § 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). See also Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) ("[A]n otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech.").

### 1) Exhaustion

Retaliation claims are included in the term "prison conditions" and require an inmate to exhaust administrative remedies in accordance with the PLRA. <u>Mitchell</u>, 318 F.3d at 531, <u>citing</u> <u>Porter</u>, 534 U.S. at 532; <u>see</u> <u>also</u> <u>Lawrence v. Goord</u>, 304 F.3d 198, 200 (2d Cir. 2002); <u>Bartelli</u> <u>v. Fedak</u>, 2006 WL 1008996 (M.D. Pa) (inmate must exhaust his retaliatory false misconduct claim against prison staff).

ISSUE 9 – Plaintiff claims that Defendant Darr, the librarian, falsified facts about his legal mail in response to a grievance he filed as part of an "ongoing pattern of retaliatory conduct." ECF No. 68-1, ¶ 79. Although Plaintiff filed two grievances (#308696 and #309358) about the delay in sending out legal mail which began on February 19, 2010, neither of these grievances names Defendant Darr or complains of retaliation. Because the DC-ADM 804 requires that an inmate identify any persons "who may have information that could be helpful in resolving the grievance" (<u>see</u> <u>supra</u>, footnote 7) and because he has failed to complain of retaliation, Plaintiff has not properly exhausted here. Accordingly, summary judgment should be granted in favor of Defendants.

ISSUE 10 – Following the March 5th cell search, Plaintiff claims he had a conversation with Officer Lucas on May 24, 2010. Allegedly, Lucas made some remarks about Plaintiff feeling like a he was a jailhouse lawyer. Then,

> "Continuing this conversation Plaintiff stated that the right to complain and seeking the redress of grievances of which was making prison officials act unprofessionally in retaliating against Plaintiff and destroying Plaintiff's legal and personal property. In response to this, Officer Lucas responded making reference to Plaintiff's cell being raided in which a lawsuit prepared by the Plaintiff against prison officials and personal property was taken and destroyed. Plaintiff inquired further into the reasons for such for which Officer Lucas responded it was due to the lawsuit being against prison officials and grievances filed by Plaintiff."

ECF No. 68-1, ¶¶ 86-87. Plaintiff has not exhausted any claim arising out of the March 5th cell search or its aftermath. Summary judgment should be granted in favor of Defendants on this claim.

### 2) *Rauser* Standard

The only retaliation claim that survives the exhaustion analysis is part of Issue 1 against Defendant McVicker where it is alleged that he destroyed Plaintiff's personal pictures.

In Rauser, the Third Circuit set forth with specificity the elements of a prisoner's cause of action for retaliation and the burden of proof he must carry to succeed." 241 F.3d at 333. "As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." Id. "Next, a prisoner litigating a retaliation claim must show that he suffered some 'adverse action' at the hands of the prison officials." Id. Then, a plaintiff must prove "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Id.[16]

After plaintiff has met his initial burden to show these three elements, the burden then shifts to Defendant to "prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." Id. The Third Circuit explained this final aspect of the burden shifting framework as meaning that "once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a

---

[16] "The Third Circuit instructs district courts to 'be diligent in enforcing these causation requirements' in recognition of the fact that public actors 'must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiff's ask the courts to second guess the actor's decisions.'" Lauren W. v. DeFlaminis, 480 F.3d 259, 267-68 (3d Cir. 2007).

legitimate penological interest. <u>Id</u>. at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. <u>See</u> <u>Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4th Cir. 1996); <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995); <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995).

Plaintiff claims that Defendant McVicker destroyed three of his personal pictures in response to Plaintiff's complaints about the inventory of Plaintiff's property on February 2, 2009. ECF No. 68-1, ¶ 6 (Issue 1). Plaintiff cannot establish the adverse action element of a retaliation claim because the destruction of three personal pictures is not "sufficiently [adverse] to deter a person of ordinary firmness from exercising his constitutional rights..." <u>Huertas v. Sobina</u>, ___ F.3d ___, ___, 2012 WL 1372146, at *2 (3d Cir. April 20, 2012). The Third Circuit has "held the following actions were sufficient to establish adversity: several months in disciplinary confinement; denial of parole, financial penalties, and transfer to a distant prison where his family could not visit him regularly." <u>Richardson v. U.S.</u>, ___ F.3d ___, ___, 2012 WL 30250854, at * 2 (3d Cir. July 25, 2012) (holding that the loss of three pairs of shoes did not constitute adverse action).

**I.      Supervisory Liability**

At Issue 12, Plaintiff alleges that Defendants Rozum (Warden), Varner, Williams, Moore (officials in the Secretary's Office of Inmate Grievances & Appeals), and Sroka (Superintendent's Assistant) allowed and condoned the unconstitutional acts of their subordinates. ECF No. 68-1, ¶¶ 97-99. This Court liberally construes these allegations as attempting to set forth a failure to supervise claim against these Defendants.

Section 1983 liability cannot generally be predicated solely upon a theory of *respondeat superior*. <u>Rizzo v. Good</u>, 243 U.S. 362 (1976).[17]   However, supervisory liability under § 1983 can be established if the plaintiff shows that the supervising official tolerated past or ongoing misbehavior from subordinate officers.  <u>Argueta v. United States Immigration & Customs Enforcement</u>, 643 F.3d 60, 72 (3d Cir. 2011).  A plaintiff must show that "the supervising officials personally participated in violating a person's rights, directed others to violate a person's rights, or had knowledge of and acquiesced in a subordinate's violations of a person's rights." <u>Simonton v. Tennis</u>, 437 Fed.Appx 60, 64 (3d Cir. 2011) <u>citing</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293 (3d Cir.1997).

In the context of a failure-to-supervise claim, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to this risk; and (4) the injury resulted from the policy or practice." <u>Green v. Bledsoe</u>, 2012 WL 2115491, at * 12 (M.D. Pa. March 27, 2012) <u>quoting</u> <u>Beers-Capitol</u>, 256 F.3d at 134.  Plaintiff has not met his burden here, and so summary judgment should be granted in favor of these supervisory Defendants.

---

[17]   <u>See</u> <u>also</u> <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986) (when a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct); <u>Rode v. Dellarciprete</u>, 845 F.2d 1958, 1207 (3d Cir. 1988) (the supervisor must be personally involved in the alleged misconduct).

## III.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion for summary judgment [ECF No. 77] be granted in its entirety.  The Clerk of Courts should be directed to close this case.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto.  See Fed.R.Civ.P. 72(b)(2).  Failure to file timely objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge


Dated:  August 7th, 2012